Good morning. Please report. We are here today because of a single Facebook blocking decision that was made in 2016, six years ago. The district court denied qualified immunity to be reversed. The plaintiffs conceded in their reply, the 11th Circuit, as well as the United States Supreme Court, has not rendered any decision that are similar to the present facts, which would have given notice to Mayor Palmer that her actions at the time she took them were in violation of clearly established law and were beyond constitutional debate. There have been four circuits, the 2nd, 4th, 6th, and 9th, that have ruled that qualified immunity was duly granted because of the lack of clearly established law when it comes to blocking comments on social media platforms. All these rulings have come from after 2016. Since the around the country that support Mayor Palmer is entitled to qualified immunity in her individual capacity. In Garnier v. O'Connor, it's the 9th Circuit case decided in 2022, in which two school board members back in October of 17 blocked the Garniers from their Facebook and Twitter account because of their long, repetitive, and critical posts regarding the retaliation aspect to this case. However, the 9th Circuit granted qualified immunity because at the time the trustees blocked the Garniers from the pages in the fall of 2017, there were no court of appeals cases addressing similar facts. What if the mayor in a different case had said, I'm going to block you from participating because I don't like your viewpoint? Do you think that would be well established? I don't think this is a viewpoint discrimination case, and I expected that question. This has come out and we have to look at whose forum is this? What forum is it? That hasn't been decided what kind of forum it is. Whose forum is it? Who owns the forum? Does Adamsville own the forum? Or does Facebook own the forum? Justice Thomas even stated in the Trump, now Biden case, that he doesn't even know if the First Amendment applies to these type cases because of the lack of clearly established law. Justice Thomas wrote that the principal legal difficulty that surrounds digital platforms, that is applying old doctrines to new digital platforms is rarely straightforward. He went on to say, we will soon have no choices but to address how our legal doctrines apply to digital platforms, making it clear that the Supreme Court and this circuit has not made any decisions how old doctrines apply to this new modern platform of digital media. So let's say that's the case. Does that create an essential get out of jail free card for officials to block people from Facebook? And even if they suspect that it is unconstitutional, so long as the exact scenario hasn't been addressed by this court and this circuit or the Supreme Court, then officials just have carte blanche to block whomever they wish for whatever reason? I don't believe, Your Honor, that it's, Judge Branch, that it's a get out of jail free card. I do believe that they need some sort of guidance going forward. And this guidance hadn't been released to date, as in the Rule 28 letter I sent to the court, which are the cases that I'm talking about, that have ruled since then that it wasn't clearly established, so they had no notice what they were doing. So I don't think it's technically a get out of jail free card as we speak today. But obviously moving forward, people such as small towns like Adamsville, governmental agencies, police departments, so forth, are going to need some sort of guidance what they can do with this rapidly evolving social media platforms. Do you think there's anything egregious enough that if someone performed this conduct on Facebook right now that it would be clearly established? Or do you think the whole area of law is completely unformed? I think the whole area of law is completely unformed. And going on further, what you said is when you sign up for Facebook to be an administrator, the Facebook rules require you to try to take down, delete, hate, insightful personal attacks. They don't want it. So you have contradictory, from old case law to what Facebook's requiring you to do. And how they coincide or how they collide is something that has to be decided. Let's say that the mayor in a given town, and I know this is not your scenario, but let's say the mayor in a given town supported a zoning change for a particular parcel of property. And the person who lived next door to that property disagreed with that change. Do you think the mayor could be subject to, do you think the mayor would receive qualified immunity if he or she blocked posts, very civil posts, from that person disagreeing with that zoning change? Based on the law today, I do. I do believe that it would be entitled to qualified immunity. So what do you think it will take to get beyond that point? Is it possible to do this at a high level of generality or do you think it's going to be a case-by-case scenario? It's probably going to be a combination of both, to be honest with you, Your Honor. I think the law will have to start out in a general, somewhat general, and then as case law develops like we have over the last 200 years, then you get more and more specific and more and more to the specific facts that place people on warning that they can't do this. Wouldn't the only thing it would take would be a clear holding that the Facebook site is a public forum or limited public forum and that it's not government speech? And once you establish clearly that this is not government speech, then it's clear that you can't say left-leaning people can post and right-leaning people cannot or proponents of zoning can post and opponents cannot. But the problem is we don't know at this point clearly whether this is government speech where the government can control what is said or it's really the same as a public forum, a soapbox in the park where all speakers are welcome. And that's what's not clearly established, right? Correct. You're absolutely correct. That can be done. And it's different than, you know, we use the example about the bulletin board inside City Hall about posting messages and all that. That's not what we have here. I mean, these, and again, I go back to even Facebook's own rules that encourage you to delete personal attacks on individuals. So the law is up in air. The law is not clearly established and in our individual capacity, qualified immunity says there must be something that some sort of, not on all fours, I grant that, it doesn't have to be on all fours, but something predecessant that required, requires her or puts her on notice. But once it's a public forum, surely the government can't stop it then on the basis that it's not polite or acerbic or whatever. Then you go back, you really do go back to established First Amendment law at that point. That's correct. If this court wants to say Facebook is a public forum, that's fine. That has now put everybody on notice and then you can, you can go back, Judge Henkel, you're right. But we don't have that and we didn't have it in 2016, six years ago. And presumably, a city could do a Facebook site either way. You could have a Facebook site and say we're not taking comments or you could have a Facebook site and say everybody's welcome to comment. And if you said this is a public forum, everybody's welcome to comment, then plainly you can't discriminate based on viewpoint. That's right. And you can limit it like you just said. You could probably do it just for a community page only. Like all we're posting is community happenings. We're not posting any political views. We're not posting, but these are all things that have to be decided and that weren't established in 2016. And that's why I'm saying Mayor Palmer is entitled to qualified immunity in her individual capacity. And I'm just about out, so I'll save my last five minutes for rebuttal. Thank you. Ms. Bedsall, and please correct me if I said that incorrectly. You said that correctly. Thank you, Your Honor. Mayors of the Court, my name is Jenna Bedsall. I have the privilege of representing Tammy Taylor, who is here with us in the courtroom today. Tammy Taylor became a citizen of the city of Adamsville in 2007. Mayor Palmer became the mayor in 2008. It is without dispute that Tammy Taylor has been a critic of the city, the city council, and some of their policies. It's important to note that the city has established a public Facebook page, two of them actually, one for the city and one for the police. In their social media policy, they specifically state that the purpose of the social media pages is to convey the city of Adamsville information to its citizens and its purpose is to disseminate information. And that's exactly what they did. That sounds like government speech. Your Honor, we would submit that it is a public forum and there is support, in fact, from this Court that has indicated, at least, that it could be for a House of Representatives. I also think that— Cite for me, cite for me the case from any controlling authority, or for that matter any circuit court in the country, anything out of the Supreme Court, any authority that clearly establishes that this is a public forum and this is not government speech. Your Honor, I think that the prior discussion of Biden versus Knight is instructive. And specifically, Justice Thomas in his concurrence— I'll let you come back to the concurrence. Justice Thomas is very much an outlier on social media. But that's not—my question is holdings, because a public official doesn't have to read a concurrence and guess what the majority is going to do. So tell me what holding of any court says that this is not government speech. Your Honor— That's just a list of cases. In 1975, there's a Southeast Promotions versus Conrad case. About the Internet? About Facebook? 1975? About the Internet, Your Honor. Okay, that's—I'm looking for Facebook or any kind of social media put up by government where there's any court holding clearly that this is not government speech. That's an easy enough question. Surely you knew that was coming because of qualified immunity. That's the question. Well, Your Honor, we would submit that there is not a decision—there's a decision out of the Fifth Circuit, the Villareal case, in which an influential journalist brought a similar section 1983 case. And in that case, the court did hold that it was clear—it addressed the—that it was a clearly established right. When you say it, what are you referring to? That specifically that the—that journalist who was commenting on the city of Laredo's policies, that thereafter the journalist was harassed and ultimately arrested, that court stated that officials can be on notice, that their conduct violates clearly established law, even in novel factual circumstances. Here's the problem. I think it's—I think it's really hard to say that we've got established law for really much of anything here because everything is so situational. For instance, if one—it may be that if the city says this page is for the city to give information and no one can post, right, it doesn't allow any comments. Well, that's probably a pretty different situation than if the city says, we've set up this—this website as a back-and-forth, you know, online town square, and then the city blocks someone from that page, right? I think there are going to be so many different frameworks that government entities take that it's going to be difficult to have a blanket rule, and it may—it may take time to develop. What's your response to that? My response is, in this case, Your Honor, we have had a clear finding not only from the state court that Ms. Taylor was engaged in rhetorical hyperbole, but also in the district court that the speech was viewpoint discrimination. I would assert that it is no different than if an individual or a city government rents, for example, a ballroom in a hotel. They can't keep people who object to a discussion about the adoption of a regulation. The city can't keep people from participating in contrary viewpoints. Except maybe they can if the discussion is supposed to be about Regulation B and the person wants to come to the ballroom and walk around with a sign protesting Regulation C, right? I mean, I think these things are so situational. It depends on the type of forum, on the restrictions beforehand, on the actions of the people. Is there a possible time, place, and manner restriction? I don't think that any of the blocking here was due to, let's say, vulgarity or anything like that. But do you think it's possible that if someone used inappropriate language, say, that their post could be blocked even if that post was expressing a different viewpoint? Your Honor, I agree with you that there will be nuances in the law. You know, I also understand the concern of, you know, in the employment context, you don't want to be the super personnel departments. I can understand the concern that you don't necessarily want to be the Internet police. But in this particular case, it is clear that the city used its Facebook page to disseminate information that was important to the public. And likewise, it banned my client from asking questions about it. It started with deleting comments about asking a question about an ordinance that they had passed. Let me ask you this. Suppose the government has a proceeding going on, and there's a preacher that's going to give the prayer, and he gets pulled down partway through based on viewpoint or based on what he's saying. Is that okay? And the answer we know from the recent decision is, yes, that's okay, because that's government speech. And the question is, is this Facebook page government speech or not? And I just ask you, for any case that settles that question, and you didn't give me one, you mentioned Knight v. Trump earlier that the Second Circuit case, two circuit judges dissented at the in-bank level. So there are two Second Circuit judges who think this is government speech. How is the mayor of a small town supposed to be on clear notice of the law when two circuit judges in the Second Circuit don't get it? Well, in this particular case, Your Honor, we do know that she called the Alabama League of Municipalities, and in one phone call was told to unblock the person. Great advice, and we wouldn't be here if she'd asked them first. So it's good advice. But look, what clearly establishes the law for qualified immunity purposes is not the legal opinion of a lawyer at a trade association. It's a binding decision of a federal court. Right? It can be, yes, Your Honor. It is. There are other ways to establish clearly established. For example, it can, as the district court held, if there are broader clearly established principles, viewpoint discrimination, that can also be a way to establish clearly established. Likewise, the third prong, which is if it is obvious. Again, we would contend that blocking an individual because you don't like their viewpoints, but allowing other people to comment freely or share, that those are elements of not only a public space, but also it's a violation of the very broad principle that was established in Rosenberger in 1995. I have a hypo for you. What if Mayor Palmer had posted a video to the town Facebook page, and then after Ms. Taylor and perhaps others had criticized it, she took down both the video and all the comments that went along with that? Would that be a First Amendment problem? It has to be. What we are here today about is viewpoint discrimination. I know, but. It's hard for me to postulate about what the video was about or what the comments were about. I do think that if you open up a public forum as. . . They were critical comments about the video. The video, Mayor Palmer in this hypo said, I love this video. What a great video. And Ms. Taylor and five other citizens said, this is a garbage video. And then the mayor took down the video. Again, it's difficult for me to postulate about what the ruling would be. I think that's part of the problem, right? I think these questions are hard, and different scenarios, some scenarios are harder than other scenarios. Right? That's true. They are. But we agree with the district court that this is a clearly established right that was violated by my client on numerous occasions. She continues to be blocked to this day and can't interact with the digital marketplace. That's not, I understand it, through any action of the city, right? The record reflects that they attempted to ascertain the reason. They have not been able to. We asked for an inspection, and that was declined. So we have not been able to establish whether or not. . . There are multiple administrators of their Facebook page, both Mayor Palmer and others. Mayor Palmer testified that she was the most frequent person who was the administrator of that particular city's Facebook page. The city represents that she's unblocked, and Facebook has, there's no evidence that she is still blocked, right? There is evidence that she is still blocked. I think Your Honor is referring to the injunction hearing. Thereafter, she was deposed. Ms. Taylor was deposed, and we went through an extensive examination demonstrating that she was still blocked and is still blocked to this day. But it's your own expert that said there's nothing on the city's side of this that blocks her, that the expert could find. Your expert couldn't find a reason. I've got to tell you. . . We need to find a Gen Zer to look at it. Maybe they'll figure it out. When my computer doesn't work, I'm generally told it's operator error, but it's hard to find. We do know that she's still blocked and has been blocked since the 2016 blocking. She has not been able to access that account or interact with the posts or comments that others in the community are able to. She has other Facebook accounts where she can do it. She does. As the Supreme Court has noted on numerous occasions, the burden, placing a burden on speech is the same as restricting that speech. Placing the burden of proof on the plaintiff is also something the Supreme Court has clearly said. So showing why she can't post, that's your burden. That is correct, Your Honor. And the district court agreed that in this particular case, Mayor Palmer was not entitled to qualified immunity and they moved for summary judgment. So those inferences go towards my client, who is the non-moving party. Let's say, and I'm not asking you to agree, but let's say that we thought that there was not clearly established law here. Do you think we have enough facts to offer our own view of the constitutional answer here or do you think that more factual development would be necessary to do that? This was submitted in the motion for summary judgment brief. It was well briefed. We believe that the record before the court is sufficient to be able to weigh in on this important issue. We believe that it is developed. We also believe that you should hold that it's a public forum, especially in this case. We believe not only did the social media policy state that it is to further dialogue with its citizens, they acted as such. Mayor Palmer decided that she was going to silence her most vocal critic. That is contrary to the very founding of this nation, especially with James Madison's words that the censorial power is in the people over the government and not the government over the people. That was stated back in 1794. Now, we would submit that the district court correctly held that Mayor Palmer did not have qualified immunity and we ask that this court affirm the district court. Thank you. Thank you. Mr. Donahue, you've got your five minutes that you reserved. I'd like to point to the court the case that my friend pointed out, the City of Laredo case. That was rendered an opinion in 2021, and the Fifth Circuit in 2022 withdrew that opinion and has now regranted oral argument, so it has no precedent whatsoever. As far as the Facebook, we did, the City of Adamsville contacted Facebook directly, and it's document 744, in which it says, glad I was able to help you with your concern, Pam. Just to summarize what we've discussed, you contacted us about a person who cannot comment or like on your page, and we are able to make sure the issue is not on your page and possibly a feature limit within that person's profile. So we went to extremes to make sure she wasn't blocked, and Facebook agreed with us. Now, along the same way, Judge Hinkle, you touched on this very briefly, that Ms. Taylor does have other Facebook pages. She has the Tammy Noel Taylor page. She has the Tammy Chileus Taylor. She has the Adams and Ford or Activate Adamsville, to name a few, which she is the owner or administrator, which allows her to share comments of any of City of Adamsville's posts. This circuit in Bennett v. Hendricks, which was a 2005 decision, held that we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a de minimis inconvenience to her exercise of First Amendment rights. A plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a de minimis inconvenience to exercise First Rights. Ms. Taylor, in this case, could transfer any post that was on the Adamsville page to any one of her four, five, six pages and comment as much as she wants. Do you think the Adamsville page is a public forum? I think it's questionable. It surely hadn't been decided by law what it is. So here, I'm not the first person by far to identify this problem with qualified immunity, but we could theoretically just say there is no clearly established law and move on, but if every court who's considering one of these questions does that, then we never get clearly established law. So at a certain point, courts may need to think about the answers to these questions even if they don't affect the outcome in a particular case. I agree with you, Judge Branch, but so far, and this case is cited, and my colleague was not able to give you one that said otherwise, have all held that qualified immunity applies, and that's what we're here about today. Right, but we do have jurisdiction to decide the constitutional issue and then say that it wasn't clearly established. So what would your argument be about what kind of forum this is? I don't know. I'm sitting here baffled as I prepared to be here today, and I discussed it with other lawyers. We went through dry runs and so forth, and we come back to the same thing. We don't know what forum it is. Justice Thomas, so forth, says he doesn't know. Facebook, within their own program, could be blocking Ms. Taylor for her comments. We don't know that. So is it truly a public forum if we don't control everything on there? Facebook actually gets to control some things. So I'm not trying to dodge your question. I just don't know the answer to it. I take it, though, from that answer that the city, and you're the city's lawyer too in all this, I take it the city is not advocating an answer one way or another, and you're not telling us to do it. Saucier, however you said the name of that case, used to say we had to do that, and now, of course, not. But it's certainly something that could be done, and I take it you're not taking a position on whether we should or should not, on what the answer ought to be. You're just saying qualified immunity and basically tell us to do what you want. That's correct. And I thank you for your time. That's all I have. Thank you. With that, our last case of the week. This court is adjourned. All rise.